## Norristown-Penn Trust Co. v. Woodhead et ux.

*Fox & McTighe*, for plaintiff.
*Raymond Pearlstine*, for defendants.

CORSON, J., September 4, 1936.—On January 17, 1935, plaintiff entered judgment upon a bond and warrant given by defendants, and damages were assessed in the sum of $6,082. The bond and warrant was secured by a joint mortgage given by defendants upon their jointly owned property at 282 Freedley Street, in the Borough of Norristown. Defendants filed a petition to open the judgment, and the rule granted thereon was made absolute. Issues were framed by counsel, and, at the trial, these issues were passed upon by a jury, and, by agreement of counsel, the verdicts were framed by the court based upon the jury's findings.

The bond was given as collateral security to secure certain notes given by defendants to plaintiff. These joint notes, however, were merely renewals of earlier notes given by Earl F. Woodhead, individually.

The jury found that Eva M. Woodhead was not a partner in her husband's business, and that she was only an accommodation maker or endorser as to all the promis-

sory notes executed by her, and that she only became a surety for her husband in executing such notes and the bond and warrant involved in the suit. Upon those findings by the jury, the court entered judgment in favor of defendant Eva M. Woodhead, and we see no reason to change this judgment upon plaintiff's motion. There was ample evidence to support the findings of the jury upon the issues involved, and, upon the jury's findings under the Married Woman's Property Act of June 8, 1893, P. L. 344, sec. 2, she could not be held liable upon either the notes or the bond: Commercial Acceptance Corp. v. Ruppel et ux., 295 Pa. 88; Pennsylvania Trust Co. v. Koller et ux., 319 Pa. 249.

In the Koller case, the court refers to the Ruppel case as sound authority. See also Real Estate Investment Co. v. Roop et al., 132 Pa. 496; Sibley v. Robertson, 212 Pa. 24.

Under the decisions, the notes and bond would seem to be void as to Mrs. Woodhead. The motion for judgment n. o. v. in favor of plaintiff as to Eva M. Woodhead must be refused.

Upon the findings of the jury, the court framed a verdict in favor of plaintiff against Earl F. Woodhead in the amount of $3,082.23, subject to the condition that the court should retain control over any execution issued upon such judgment, and that such judgment should be only a conditional lien upon the interest of Earl F. Woodhead in the premises 282 East Freedley Street, in the event that Mrs. Woodhead should predecease her husband. To this judgment defendant Earl F. Woodhead has moved for judgment non obstante veredicto.

From the admitted facts, it would appear that for some years Woodhead had been a borrower from, and a depositor with, plaintiff trust company. From a small start, the business of defendant increased to a point where he purchased a rather large property at Betzwood, in this county. For the purposes of securing his loans to the trust company, Woodhead executed a first mortgage of $20,000 and a second of $10,000 upon the Betzwood property to

plaintiff. Some time thereafter, in 1927, Woodhead and his wife executed as further security, for part of his loans, the bond and warrant involved in the present suit.

On April 7, 1934, Earl F. Woodhead was adjudicated a bankrupt in the District Court for the Eastern District of Pennsylvania. At the time of such adjudication the indebtedness of Earl F. Woodhead to plaintiff was less than $30,000, the amount of the mortgage held on the Betzwood property. Plaintiff, in the bankruptcy proceedings, therefore must be considered as a secured creditor.

On July 30, 1934, plaintiff made a written offer to the trustee of the bankrupt Woodhead, offering to pay the sum of $50 for the Betzwood property under and subject to the lien of the first and second mortgages, totaling $30,000, together with any taxes, municipal claims, interest, etc.

On August 3, 1934, the trustee filed his petition in the bankruptcy court, asking leave to sell the property to plaintiff in accordance with its offer. On August 13, 1934, after notice, etc., the referee entered an order authorizing and directing the conveyance of the premises to plaintiff in accordance with its offer. On August 27, 1934, the trustee executed and delivered a deed for the property to plaintiff, subject to the lien of the mortgages. Such deed was accepted by plaintiff and duly recorded.

In the bankruptcy proceedings, the Betzwood property was appraised at $37,500 and there was evidence that a cash offer had been received by the trustee in the neighborhood of $27,000. It is the contention of defendant Woodhead that the purchase by plaintiff of the Betzwood property for a price above the amount of the mortgages, interest, etc., acted as an extinguishment of the indebtedness of Earl F. Woodhead to the trust company. A point for charge to that effect having been submitted and refused, defendants are in the proper position to ask for judgment n. o. v.

The Federal Bankruptcy Act of July 1, 1898, 30 Stat. at L. 544, sec. 57 (*h*), provides as follows:

"The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims and a dividend shall be paid only on the unpaid balance."

Under this section, it would appear that the pledgee, in this case plaintiff, had the right to sell the mortgages which it held and to make a claim against the bankrupt estate for any balance not obtained by sale of such securities. Plaintiff, however, did not take this course of procedure, and, admittedly, never filed a claim as a general creditor against the estate of the bankrupt.

The trustee and the trust company, in their agreement of sale, approved by the referee, must be found to have agreed that the value of the property taken over was $50 more than the amount of the two mortgages, together with interest due, taxes, etc. This was an entirely proper thing to do and was approved by the Federal court in the case of In re Rose, 193 Fed. 815. In this case the court held:

"Where . . . was mortgaged to its full value . . . it was proper for the trustee to negotiate with the mortgagee to see if he would take the property in satisfaction of his claim."

Plaintiff chose its own method of liquidating its security and, instead of petitioning the bankruptcy court for leave to foreclose its mortgages, agreed with the trustee to a valuation of $50 above the amount of the mortgages. Since the amount of the mortgages was greater than the indebtedness, plaintiff must be held to have been paid by the acceptance of property having a greater value than the amount owing by the bankrupt. Any other conclusion can only lead to uncertainty and indefinite delay in

the determination of Woodhead's liability. Unless the agreement to purchase is treated as an agreement as to the value of the mortgages, their value may never be fixed and Woodhead would never know when his debt had been paid.

Plaintiff owning the Betzwood property, there is nothing upon the record to indicate that, even if the entire indebtedness was offered in cash by Woodhead, plaintiff would satisfy the mortgages and turn the property over to Woodhead. There is nothing to prevent plaintiff from satisfying the mortgages at any time, and, in the absence of any intention to the contrary, it might be at least contended that a merger had taken place when title to the property and to the mortgages both came into plaintiff.

At the argument, counsel for plaintiff admitted the equity of the doctrine that a mortgagee cannot have the security and the debt as well, but must satisfy the debt to the extent of the security. Counsel, however, claimed the right to foreclose in the State court and pursue all its security until it had completely exhausted the debt.

Under the authority of Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734, it would appear that a mortgagee of a bankrupt's real estate cannot foreclose his mortgage without the permission of the bankruptcy court if he desires to foreclose after the date of the filing of the petition in bankruptcy.

With an appraised value of $37,500, it is difficult to see how the bankruptcy court would have authorized foreclosure unless upon the condition that the debt be satisfied. Plaintiff contends, however, that the so-called "bankruptcy rule" does not prevent plaintiff from proceeding under the Pennsylvania law. However, when we look at Pennsylvania law and assume that plaintiff had purchased the Betzwood property at a judicial sale, subject to the two mortgages, the rule may be different. In the case of Greensburg Fuel Co. et al. v. Irwin Natural Gas Co., 162 Pa. 78, 85, the court said:

"A mortgage, the lien of which is not discharged by a sheriff's sale, cannot share in the proceeds of the sale. In such case all that the purchaser takes by the sale is the equity of redemption, and his bid is for such sum as he is willing to pay for the property above the amount of the mortgage debt. If the purchaser is the mortgagee his mortgage is in equity satisfied; his claim is paid in the purchase of the property sold subject to it: Commonwealth v. Wilson, 34 Pa. 63; Cross v. Stahlman, 43 Pa. 129; Carpenter v. Koons, 20 Pa. 222; Bryar's Appeal, 111 Pa. 81; Dollar Savings Bank v. Burns, 87 Pa. 491, and Cock v. Bailey, 146 Pa. 328."

Plaintiff, if there had been any question about the value of the security, could have asked the trustee to sell the property free and clear of all encumbrances to the highest bidder. The referee had secured an offer of $27,500 for the property, and it might well be that a higher offer might have been secured at a public sale where the property had been advertised and notice given to all parties in interest. In such an event, the entire indebtedness might have been paid to the secured creditor. Plaintiff chose, however, to come into the bankruptcy court and take title to the property and mortgages, and such action must be construed as a matter of law as fixing the value of the property, whether it be called by agreement between the trustee and plaintiff or by litigation when that agreement was approved and the conveyance ordered by the referee. See Cock v. Bailey et al., 146 Pa. 328, referred to in the Greensburg case, supra. It must be presumed that the amount due plaintiff as evidenced by the mortgages was a part of the consideration for the purchase of the property: Orient B. & L. Assn. v. Freud, 298 Pa. 431, 435.

And now, September 4, 1936, for the reasons given in the foregoing opinion, plaintiff's motion for judgment n. o. v. as to Eva M. Woodhead is refused, and defendants' motion for judgment n. o. v. as to Earl F. Woodhead is

sustained; the verdict in favor of plaintiff against Earl F. Woodhead is set aside, and judgment is directed to be entered in favor of defendant Earl F. Woodhead.

From Aaron S. Swartz, Jr., Norristown.